# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| DAWN M. MCHUGH, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00749-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the § | |
| Social Security Administration, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION

Plaintiff Dawn M. McHugh ("McHugh") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). (ECF No. 1). Pursuant to the consent of the parties and the order of reassignment dated December 17, 2018, the case has been transferred to the undersigned for the conduct of all further proceedings and the entry of judgment. (ECF No. 14). After considering the pleadings, briefs, and the administrative record, the Court **AFFIRMS** the Commissioner's decision.

## I. STATEMENT OF THE CASE

McHugh filed an application for DIB on July 27, 2015, alleging a disability onset date of July 13, 2011. (Transcript ("Tr.") 51, 68, 133). The Commissioner initially denied the application for benefits on October 22, 2015, (Tr. 61), and denied upon reconsideration on January 12, 2016 (Tr. 73). McHugh requested a hearing before an Administrative Law Judge ("ALJ"), (Tr. 85–86), and a hearing was held before an ALJ in Dallas, Texas on March 6, 2017 (Tr. 29–50). An attorney

represented McHugh at the hearing, and a Vocational Expert ("VE") testified at the hearing. (*Id.*). During the hearing, McHugh amended her alleged disability onset date to June 21, 2013. (Tr. 33). The ALJ issued a decision on August 29, 2017, finding McHugh not disabled from June 21, 2013 through December 31, 2015, the last date insured. (Tr. 23).

In the decision, the ALJ employed the statutory five-step analysis. At step one, the ALJ found that McHugh had not engaged in substantial gainful activity since June 21, 2013, the alleged disability onset date, through December 31, 2015, the date last insured. (Tr. 17, Finding 2). At step two, the ALJ found that McHugh had the severe impairments of erythromelalgia ("EM") and acute gastritis. (Tr. 17, Finding 3). EM is a condition characterized by episodes of pain, redness and swelling in various parts of the body, particularly the hands and feet. *Genetics Home Reference: Your Guide to Understanding Genetic Conditions*, NAT'L INSTS. OF HEALTH https://ghr.nlm.nih.gov/condition/erythromelalgia (last visited June 4, 2019). At step three, the ALJ found that McHugh's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 17–18, Finding 4). The ALJ, therefore, determined that McHugh had the residual functional capacity ("RFC") to perform "at least light work . . . . The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand[,] and/or walk for 6 hours in an 8-hour workday." (Tr. 18, Finding 5). At step four, with this RFC, the ALJ found that McHugh was capable of performing past relevant work as a customer service representative. (Tr. 22, Finding 6). Thus, the ALJ ruled McHugh had not been disabled from July 21, 2013 through December 31, 2015. (Tr. 23).

The Appeals Council denied McHugh's request for review on July 10, 2018. (Tr. 1–6). Therefore, the ALJ's decision became the Commissioner's final decision and is properly before

2

the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II. FACTUAL BACKGROUND

According to McHugh's pleadings, testimony at the administrative hearing, and the administrative record, McHugh was 50 years old on the alleged disability onset date and 53 years, 11 months old at the time of the administrative hearing. (Tr. 29, 33). She completed a high-school education. (Tr. 180). Her employment history included work as a customer service representative. (Tr. 33, 254). McHugh asserts that her physical impairments render her disabled under the SSA. (Tr. 133–34).

## III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100–

03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the

evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV. ANALYSIS

McHugh raises one issue on appeal with several sub issues. She claims that the ALJ's RFC finding is not supported by substantial evidence. (ECF No. 17). Specifically, McHugh alleges that the ALJ failed to account for her disabling pain and fatigue in establishing her RFC limitations. (*Id.* at 8–9). The Commissioner contends that the ALJ properly considered the objective medical evidence in the record to assess McHugh's subjective level of pain and fatigue. (ECF No. 18 at 5).

**A. The ALJ properly considered McHugh's subjective complaints of pain and fatigue in is RFC assessment, which is supported by substantial evidence.**

"The responsibility for determining a claimant's RFC lies with the ALJ . . . [and] the ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Moreover, "[t]he ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Instead, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) . . . ." SSR 96-8p, 1996 WL 374184 at *7.

McHugh argues that the ALJ improperly relied on the absence of any physical restrictions imposed by her treating physicians to indicate her pain and fatigue was not as severe as alleged. (ECF No. 17 at 14). However, subjective complaints of pain must be corroborated by objective evidence. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Pursuant to SSR 96-7p, an

5

ALJ assessing a claimant's allegations of symptoms such as pain or fatigue must conduct an objective-subjective, two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam). In the first, objective step, the ALJ must determine whether an impairment exists that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an impairment at step one, the ALJ proceeds to the second, subjective step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's claims about symptoms. *Id.*

The ALJ need not "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected," but is required "to explain his reasons for rejecting a claimant's complaints of pain." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Pursuant to SSR 96-7p and 20 C.F.R. § 416.929(c)(3), an ALJ employs a seven-factor analysis to assess the claimant's credibility regarding subjective allegations of pain or fatigue:

> (1) plaintiff's daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms; (5) treatment, other than medication, undertaken to relieve pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

*Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing 20 C.F.R. § 416.929(c)(3)). Although the ALJ must explain his reasons, "neither the regulation nor interpretive case law requires that the ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince*, 418 F. Supp. 2d at 871 (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Further, "[t]he evaluation of a claimant's subjective symptoms is

a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024.

The ALJ's evaluation of McHugh's subjective complaints of pain and fatigue is sufficiently specific to make clear that the regulatory factors were considered. The ALJ identified the proper legal standards, stated the parameters of the objective-subjective, two-step analysis he was required to undertake, and proceeded in compliance with the proper legal standards. (Tr. 18–22). After considering the evidence, the ALJ determined that McHugh's medically determinable impairments could reasonably be expected to cause the alleged symptoms at step one. (Tr. 19). However, the ALJ found that McHugh's statements concerning the intensity, persistence, and limiting effects of symptoms were not entirely consistent with the medical evidence in the record. (*Id.*).

To support this determination, the ALJ acknowledged McHugh's hearing testimony where she discussed her symptoms. (*Id.*). The ALJ recited the following subjective complaints made by McHugh at the hearing: (1) pain from EM in her hands and feet resulting in swelling and loss of feeling in her fingertips; (2) limitations in daily activities such as the inability to stand for more than fifteen minutes, to shop for groceries due to her need to rest, and to use a keyboard; (3) gastritis symptoms resulting in stomach pain, diarrhea, and nausea, although she reported medication was currently working; and (4) side effects caused by medication resulting in blurred vision, dizziness, and drowsiness. (*Id.*).

The ALJ's credibility determination did not stop with merely acknowledging McHugh's alleged symptoms and limitations. After reciting the medical evidence in the record from treating

7

physicians and other evidence, the ALJ provided reasons for discounting the severity of McHugh's alleged pain and fatigue and the extent to which they affected her ability to work. He noted: (1) the record reveals no serious physical restrictions recommended by any treating physician or any progressive physical deterioration as expected from a claimant asserting totally disabling symptoms; (2) her EM symptoms improved with medication and her treating physician had no new recommendations; (3) her esophagogastroduodenoscopy ("EGD") and colonoscopy were unremarkable; and (4) all her physical examinations were essentially benign. (Tr. 21–22). The ALJ specifically stated that the "issue is not the existence of pain and/or fatigue, but rather the degree of incapacity incurred because of []them." (*Id.*). He concluded McHugh had mild or moderate chronic pain and fatigue that, while noticeable, was controllable with medication such that she could remain attentive and responsive in a work setting. (*Id.* at 22). The ALJ also concluded that based on the evidence in the record indicating a lack of significant findings at McHugh's numerous physical examinations, there was no basis to limit McHugh to any more than at the light exertional level or expect McHugh to need excessive absences from work. (*Id.*).

The medical evidence relied on by the ALJ supports the RFC determination. McHugh's physical examinations did not show the progressive physical deterioration that is expected when pain and fatigue result in totally disabling symptoms as she alleged. (Tr. 21–22). McHugh's physical examinations during the relevant period consistently were normal, and no physical limitations were noted, which supports the ALJ's determination. (Tr. 19–21). Specifically, McHugh's treating physician and rheumatologist, Margarita Fallena, M.D., examined her on numerous occasions from July 25, 2014 through December 23, 2016. (Tr. 306–331, 489–513, 565–610). Despite McHugh's allegations of constant, debilitating pain, Dr. Fallena consistently observed, among other things, McHugh's normal gait, reflexes, and motor strength with no signs

8

of tender or swollen joints in her upper or lower extremities. (*See id.*). Dr. Fallena's progress notes show no indication of any physical deterioration, and she did not place any restrictions on McHugh to support her allegations of disabling pain or fatigue. (*See id.*). Further, another treating physician, Martyn Gordon, M.D., examined McHugh on June 12, 2014, September 1, 2015, and September 23, 2016. (Tr. 374–95, 524–541). Although Dr. Gordon acknowledged McHugh's unqualified joint and limb pain, he observed she was negative for swollen joints, weakness, limited movement, dorsal pain, lumbar strain, muscle strain, ankle sprain or strain, and rheumatoid arthritis. (Tr. 381, 525, 529). Further, consistent with Dr. Fallena's observations, he observed no muscular tenderness, weakness, or joint swelling; normal range of motion; and good muscle tone and strength. (Tr. 383, 527, 531). Like Dr. Fallena, Dr. Gordon did not mention any physical deterioration and did not place any restrictions on McHugh. (*See* Tr. 374–95, 524–541). This supports the ALJ's observation that that "all examinations have been essentially benign through the years." (Tr. 22).

The ALJ also discussed diagnostic tests related to McHugh's gastritis, noting the results were unremarkable. (Tr. 22). Specifically, on September 1, 2016, an esophagogastroduodenoscopy ("EGD") was performed and biopsies obtained. (Tr. 559–561). Dr. Srinivasan noted the esophagus and duodenum were normal. (*Id.*). While he noted some mild nonerosive gastritis, he concluded no findings from the EGD to explain McHugh's symptoms of intractable nausea and vomiting. (Tr. 559). An MRI of McHugh's brain also was performed to rule out any central nervous system abnormalities contributing to her symptoms. (Tr. 896). The MRI was unremarkable. (*Id.*). After a visit to the emergency room for gastritis, another EGD was performed with results similar to the September 2016 EGD. (Tr. 915, 926–27). McHugh also underwent a colonoscopy (Tr. 892–94) with no significant histopathological diagnosis. (Tr. 924).

9

The ALJ further noted how McHugh's EM symptoms improved with medication, and her treating physician had no new recommendations for treatment . (Tr. 22 (citing to Dr. Fallena's and Dr. Gordon's progress notes)). Dr. Gordon's progress notes from September 1, 2015 indicate McHugh experienced "some relief" in her hands and feet with medication. (Tr. 529). Dr. Fallena's progress notes, documenting McHugh's symptoms, show that hydrocodone helped with pain, but it is less clear to what extent other medications and treatments improved EM symptoms on a continued basis. (*See* 306–331, 489–513, 565–610). Dr. Fallena reported that McHugh "feels that [gabapentin] is helping some with the symptoms" after increasing her dosage (Tr. 593), but she continued to report EM symptoms when her hands and feet are exposed to heat or in warmer weather. (Tr. 568, 571, 577, 581, 584, 587, 590). Further, after McHugh tried several creams and medications, Dr. Fallena wrote in her December 23, 2016 assessment that she did not have any new recommendations if EM symptoms worsened. (Tr. 566).

After McHugh complained that the hydrocodone dosage did not adequately control her pain, Dr. Fallena explained that she would need to see a pain management specialist and recommended she be referred to the Mayo Clinic, which McHugh refused for financial reasons. (Tr. 566, 569). Although Dr. Fallena documented McHugh's subjective symptoms, she rendered no opinion about the credibility of them. (Tr. 569 ("I discussed with her that if she needs a higher dose . . . .")). The ALJ's observation that McHugh improved with medication is somewhat supported by the record, but not clearly so. Dr. Fallena's statement that she had no further recommendations to manage McHugh's pain if it worsened is not an affirmative statement discrediting McHugh's allegations of disabling pain. However, the ALJ's observation that medication improved McHugh's symptoms is not the only factor that the ALJ considered in

assessing McHugh credibility. Thus, even if the ALJ erred on this point, McHugh has failed to show how she was prejudiced by such error. *Newton*, 209 F.3d at 459.

Finally, the ALJ also relied upon State Agency Medical Consultants ("SAMC") who reviewed the record evidence dated through September 2015. (Tr. 51–60, 62–72). The ALJ noted in his decision that McHugh submitted additional medical evidence in conjunction with her request for the hearing. (Tr. 22). The ALJ stated that because the evidence did not show a decline in McHugh's physical or mental functioning, the SAMCs' assessment that McHugh is capable of performing a full range of light work would not be altered. (*Id.*). Because the SAMCs' assessment was consistent with all of the evidence, including the medical records subsequently offered, the ALJ found that McHugh could work at the light exertional level. (Tr. 22).

"The record indicates that the ALJ used the medical information provided by [McHugh] to determine [her] residual functional capacity for work. Under the regulations and [Fifth Circuit] case law, the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Thus, the ALJ's RFC determination is supported by substantial evidence in the record. Moreover, although the ALJ did not enumerate his findings related to the credibility factors listed above, the ALJ's decision as a whole reveals he considered all the evidence, including McHugh's history, medical records, the SAMCs' assessments, and McHugh's testimony. *Andrews v. Astrue*, 917 F. Supp. 2d 624, 646 (N.D. Tex. 2013) ("[T]he ALJ's decision as a whole reveals that he considered all the evidence, including [claimant's] history, medical records, medical opinions, and [claimant's] own testimony, before concluding that [claimant's] subjective complaints were not credible to the extent that she alleged."). Thus, the ALJ's conclusion is sufficiently specific to

make clear that the credibility factors were considered in discounting McHugh's alleged degree of disability based on severe pain and fatigue.

**B.     McHugh's more specific objections are without merit.**

    **1.     The ALJ properly considered the medical evidence from McHugh's treating physicians.**

McHugh argues that the lack of any physical limitations placed on her is an insufficient reason for the ALJ to discount the severity of her symptoms, citing to *Francois v. Comm'r of Soc. Sec.*, 158 F. Supp. 2d 748, 767 (E.D. La. 2001). (ECF No. 17 at 14). In *Francois*, the claimant suffered from acute migraines and related, significant emotional issues. *Francois*, 158 F. Supp. 2d at 768. Claimant's migraines were so severe that she not only sought regular treatment at a neurology clinic, but she was also forced to seek emergency care on several occasions. *Id.* at 763. Claimant's condition was described as classic and complicated migraines with a significant behavioral component. *Id.* at 764. Treating physicians described claimant's migraines in severe terms and ordered serious prescription medications aimed at pain relief along with daily psychoactive medication. *Id.* at 768. Further, because the claimant had not worked for years, her treating physicians had no reason to know any work restrictions were warranted and, therefore, no work restrictions were documented. *Id.* The court concluded that the ALJ ran afoul of this duty because the case involved a complete absence of any medical basis for the ALJ's functional assessment. *Id.* at 768.

The instant case is distinguishable from *Francios*. Aside from different impairments, McHugh's EM symptoms are not described by Dr. Fallena or Dr. Gordon in severe terms. Further, the medical evidence does not indicate a significant behavioral component that the ALJ ignored. Moreover, the medical evidence shows that the examinations from McHugh's treating physicians were substantially consistent with no manifestations of disabling pain, such as limitations in range

12

of motion, muscular atrophy, sensory and reflex deficits, weight loss, noticeable swelling, or muscle spasm. *Id.* at 763. Accordingly, unlike *Francios*, there was not such a paucity of evidence in the record that the ALJ erred in discounting McHugh's subjective complaints of disabling pain and fatigue. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) ("The absence in the record of objective factors indicating the existence of severe pain, such as persistent significant limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition justifies the conclusions of the administrative law judge.").

McHugh also argues that the ALJ failed to consider the uniqueness of her impairments, equating EM to fibromyalgia. (ECF No. 19 at 3). McHugh has not cited to any cases making such a comparison; nor has the undersigned found any. Further, McHugh conflates the difficulty with diagnosing an impairment with assessing whether a claimant's allegation of pain is credible. Here, the medical evidence reflects McHugh's treating physicians diagnosed her with EM, and the ALJ found that McHugh suffered from EM and gastritis. (Tr. 17). Although the ALJ found McHugh had mild to moderate chronic pain and fatigue, (Tr. 22), the mere existence of pain does not establish disability. *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1995) (citation omitted). Because the ALJ's determination that McHugh's pain and fatigue were not so severe to be disabling and is supported by substantial evidence, his determination is entitled to considerable deference. *Villa*, 895 F.2d at 1024.

On this point, McHugh also argues, for the first time in her reply brief, that the ALJ "should have sought the help of an expert in [McHugh's] condition in order to properly evaluate its functional effect." (ECF No. 19 at 5). A court may decline to consider an argument made in a reply brief that was not raised in a claimant's opening brief. *Jones v. Astrue*, No. 3:10-CV-2342-D, 2011 WL 2633793, at *4 (N.D. Tex. July 5, 2011) (citing *Senior Unsecured Creditors' Comm. of First*

13

*RepublicBank Corp. v. F.D.I.C.*, 749 F. Supp. 758, 772 (N.D. Tex. 1990)). Notwithstanding this rule, the Court will consider the argument.

An ALJ has a duty "to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). An ALJ fulfills this duty by ordering a consultative examination when it is "necessary to enable the ALJ to make the disability determination." *Id.* An ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (5th Cir. 2001). The decision to require a consultative examination is with within the discretion of the ALJ. *Pierre v. Sullivan*, 884 F.2d 799, 802–03 (5th Cir. 1989). The record considered by the ALJ included hearing testimony; hundreds of pages of medical records spanning over two years of treatment; medical records from McHugh's hospitalizations and surgery; and assessments made by the SAMC. There is no indication that the record was ambiguous or so inadequate to prohibit a proper evaluation of McHugh's impairments. Accordingly, McHugh has not demonstrated that if the ALJ had ordered a consultative examination concerning her alleged pain this would have led to a more favorable decision. Remand is not warranted on this basis.

### 2. The ALJ's reasoning is not conclusory.

McHugh argues that the ALJ's reasoning for rejecting her subjective allegations was conclusory. But as described above, the ALJ outlined several reasons why her allegations of pain and fatigue were not supported by the medical evidence. The lack of any objective findings from McHugh's treating physicians was but one factor. Further, the ALJ recited all of the medical evidence in the record he relied on in discounting the severity of McHugh's alleged pain and

concluded the record did not show any progressive physical deterioration that one might expect with such debilitating pain and fatigue. Subsequently, the ALJ discussed which part of the record supported his conclusion. Thus, contrary to McHugh's argument, the ALJ's reasoning was not conclusory.

    **3.    McHugh's argument that the ALJ ignored her weight *gain* is without merit.**

McHugh argues that the ALJ erred when he did not discuss her allegedly significant weight gain. McHugh contends the weight gain supports her allegations of severe pain and fatigue. McHugh weighed 107 pounds when she started treatment with Dr. Fallena on July 25, 2014, and when she was examined by Dr. Gordon on September 1, 2015, she weighed 121 pounds. (ECF No. 17 at 12). McHugh gradually gained weight over this time period that began after she started medication to control EM symptoms. (*Compare* Tr. 601 *with* Tr. 596). Additionally, as she gained weight, Dr. Fallena's physical examinations of McHugh were consistent. And during the relevant time-period, Dr. Gordon consistently observed McHugh was thin, ambulatory, and not in distress. (Tr. 374, 382, 526). Further, the ALJ's RFC determination acknowledged McHugh's weight gain, showing that he considered it. (Tr. 19–20). Accordingly, McHugh's argument, without any objective evidentiary support indicating McHugh's weight gain was an issue, is not persuasive to show that the ALJ erred by not explicitly discussing it.

    **4.    The ALJ properly concluded that McHugh's medically determinable impairments would not cause excessive absences.**

McHugh argues that the ALJ erred by concluding her impairments would not cause excessive absences. In support, she cites to several occasions where she sought treatment for nausea and vomiting at a hospital emergency room or urgent care facility. (ECF No. 17 at 16). A person is disabled if her impairments prevent her from engaging in substantial gainful activity

which "lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen*, 168 F.3d at 154.

Many of McHugh's treatments for nausea and vomiting occurred after December 31, 2015, the date she was last insured. McHugh cites to eight days during 2015 when she was treated for gastritis symptoms. (ECF No. 17 at 16). The undersigned notes that McHugh's treatment in November, which lasted four days, involved several consultations that culminated in a decision to remove her gall bladder. (Tr. 801–03). McHugh also cites to notes from a hospital visit on October 12, 2015. (ECF No. 17 at 16). During this visit she was admitted for symptoms related to gastritis, treated by medical personnel, and discharged the next day. (*Id.*). The notes documenting McHugh's October visit show she had multiple emergency and urgent care treatments for gastritis during the six-week period leading up to her being admitted. (Tr. 407). However, she does not cite to any evidence of these emergency room and urgent care visits. Nor could the undersigned find any in the record. McHugh also cites to fourteen hospital visits for nausea and vomiting from March 2016 to December 2016, many of which occurred from August 2016 through December 2016. (ECF No. 17 at 16). As a whole, this evidence, at best, shows McHugh's gastritis may have been disabling for the last half of 2015. However, the evidence is insufficient to show it prevented her from substantial gainful activity that lasted or was expected to last for more than twelve months during the relevant time-period of June 21, 2013 through December 31, 2015. Thus, the ALJ did not err by concluding the objective findings in the record did not substantiate McHugh's impairments would cause excessive absences.

## V. CONCLUSION

The ALJ employed the correct legal standards and properly considered all of McHugh's subjective complaints and the objective medical evidence in the record to determine her RFC. His

conclusion that she was not disabled was supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision.

**SIGNED** June 13, 2019.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE